[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 30, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10867
Non-Argument Calendar

_____

D. C. Docket No. 04-02714-CV-P-S

JEROME (NMI) BENNETT,

Plaintiff-Appellant,

versus

CARI M. DOMINGUEZ,
Chairwoman, Equal Employment
Opportunity Commission,

Defendant-Appellee,

FANNIE THOMAS,
Personnel Officer (Retired),

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 30, 2006)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Jerome Bennett appeals, pro se, the district court's grant of summary judgment in favor of the Equal Employment Opportunity Commission ("EEOC") in his civil action filed pursuant to the Rehabilitation Act, 29 U.S.C. § 701 et seq. and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  The district court properly granted summary judgment to the EEOC on all claims.[1] Therefore, we affirm.

## I. Background

On March 3, 1999, Bennett responded to a vacancy announcement from the EEOC's Birmingham, Alabama district office seeking applicants for two EEO investigator positions.[2]  The announcement noted that the positions were available under a competitive, merit-promotion process to applicants who were reinstatement eligibles or from the EEOC district office and federal agencies, and under a noncompetitive process to individuals who were eligible for appointments under special hiring authorities such as the Veterans' Readjustment Act, 38 U.S.C.

---

[1] Bennett also raised a claim under the Privacy Act of 1974, 5 U.S.C. § 552a, for the first time on appeal.  Because he failed to raise the claim before the district court, he has waived it. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

[2] The record shows that the Birmingham district office ultimately received greater hiring authority and hired eight new investigators.

2

§ 4214. At the time of the announcement, federal agencies also had the discretion to give "noncompetitive appointments to any veteran who has a service-connected disability of 30% or more." The announcement informed applicants that they "d[id] not have to request noncompetitive consideration," but instructed applicants seeking to qualify for noncompetitive status to submit documentation verifying their eligibility. The announcement further notified applicants that "[a]ny disability-related information provided will be kept confidential in accordance with law and regulations."

Bennett requested that he be considered on a competitive basis as reinstatement eligible and with a ten-point veterans' preference and on a noncompetitive basis under the VRA authority and the 30 percent or more disabled veterans authority. His application included, inter alia, (1) an October 1998 letter from the Department of Veterans Affairs ("DVA") certifying that Bennett is 30 percent or more disabled; (2) Department of Defense Form 214, Certificate of Release or Discharge from Active Duty, documenting Bennett's honorable discharge from the Army and listing "physical disability with severance pay" as the "narrative reason for separation"; (3) Standard Form 50, Notification of Personnel Action, showing that Bennett resigned from his position as a Commissary Store Manager in September 1990 and listing the reason for resignation as "returning to

3

the States for medical [r]easons, to undergo reconstruct[ive] surgery"; (4) a ten-page narrative in which Bennett discussed his education and experience and their relevance to the selection criteria noted on the vacancy announcement; and (5) a voluntary Background Survey Questionnaire from the Office of Personnel Management, in which Bennett answered yes when asked whether he had a physical disability.

The Birmingham district office received 146 applications for the position, and Fannie Thomas, the district office's personnel officer, reviewed the applications to determine whether the applicants met the minimum qualifications on either a competitive, merit promotion basis or on a noncompetitive basis. Applications from candidates meeting the minimum qualifications went to one of two panels charged with making hiring recommendations to Cynthia Pierre, the EEOC's District Director with ultimate hiring authority. One panel considered the competitive applicants and the other panel considered the noncompetitive applicants. Thomas reviewed Bennett's application and determined that he was eligible for selection on a noncompetitive basis but not on a competitive basis.[3]

---

[3] Bennett requested in his application that he be considered on a competitive basis as a reinstatement eligible. Thomas determined that Bennett was not reinstatement eligible; thus, Bennett was not considered on a competitive basis. Bennett did not challenge this determination in the district court or before this court. Therefore, we do not determine whether the EEOC made the proper determination.

4

Thomas sent applications from Bennett and seven other individuals who met the minimum qualifications for noncompetitive hiring as VRA and Schedule A applicants to the applicable recommendation panel.[4]

A four member panel of W.D. Files, Murray Gosa, Leon Kennedy, and Samuel Hall evaluated the applications from Bennett and the seven other Schedule A and VRA applicants and made recommendations to Pierre. The panel recommended two of the eight applicants to Pierre but did not recommend Bennett. Pierre considered only those applicants who received a recommendation from a panel.

After receiving notice that he did not receive the investigator position and unsuccessfully pursuing EEOC administrative remedies, Bennett filed suit in the U.S. District Court for the Southern District of Georgia against Thomas and Cari Dominguez, chair of the EEOC. Subsequently, the Southern District of Georgia transferred venue to the U.S. District Court for the Northern District of Alabama, and the Northern District of Alabama ordered Bennett to file an amended complaint. Bennett filed an amended <u>pro se</u> complaint alleging five claims. The amended complaint named Dominguez as the sole defendant.[5]

---

[4] Schedule A is another special hiring authority for disabled veterans.

[5] Because Bennett's claims are against the EEOC and not Dominguez, the nominal defendant, we refer to the EEOC rather than to Dominguez.

5

All five claims centered on the alleged mishandling of disability information in Bennett's application for the investigator position. The first claim stated that the EEOC made an unlawful disclosure of confidential medical disability materials in violation of 42 U.S.C. §§ 12112(d)(3)(B) and (4)(C) by failing to keep those materials in a separate folder during the pre-employment process. The second claim stated that the EEOC violated 42 U.S.C. § 12112(d)(2) by making an unlawful pre-employment examination of confidential medical disability information. The third and fourth claims alleged that Bennett suffered disparate treatment and discrimination in the application process because he was discriminated against based on his disability, in violation of 42 U.S.C. §§ 12112(a) and (b)(1). Finally, Bennett claimed that he experienced unlawful segregation as a job applicant during the selection process, in violation of 42 U.S.C. § 12112(d)(3).[6]

After the EEOC answered, Bennett filed a motion for partial summary judgment. Bennett argued that he was entitled to summary judgment as to (1) the unlawful disclosure of medical disability documentation, in violation of the Rehabilitation Act of 1973 and 42 U.S.C. § 12112(d)(4); (2) the unlawful pre-employment inquiry, in violation of Rehabilitation Act of 1973 and 42 U.S.C.

_____

[6] Bennett initially asserted a Title VII claim for racial discrimination, but Bennett moved to withdraw that claim before the case went to summary judgment. The district court granted Bennett's motion.

6

§ 12112(d)(2)(A); and (3) the failure to separate his medical records from other personnel records during the selection-screening process, in violation of the regulations promulgated under the ADA, 29 C.F.R. §§ 1614.203(e)(4) and 1630.14(c).

Bennett supported his summary judgment motion with the documentation that he attached to his complaint, particularly focusing on the information he submitted to verify his disability status. Bennett argued that the forms he submitted that documented his medical disabilities were not submitted voluntarily because the EEOC required all VRA applicants to provide documentation that showed they qualified as VRA applicants. Bennett contended that even though the EEOC could permissibly review his disability information during the screening process, the EEOC violated federal law when Thomas forwarded the disability information to the screening panel and when the panel conducted an unlawful pre-employment inquiry by examining the disability information. According to Bennett, he and seven other applicants qualified for noncompetitive hiring under the VRA and Schedule A and passed the initial screening, but none of them was considered in the second round of the selection process.[7]

---

[7] Bennett also discussed the application of another individual, Manuel R. Valenzuela, who applied for a noncompetitive appointment based on his disability. Bennett alleged that the panel made unlawful pre-employment inquiries into Valenzuela's disability. Contrary to Bennett's assertion, however, the EEOC presented documentation that showed that the panel

Bennett attached the following documents in support of his motion: (1) a response from Pierre to questions by the EEOC's Complaint Processing and Compliance Division, in which she stated that she did not review Bennett's application, was not unaware that he had applied, and selected applicants based on experience and education; (2) the Birmingham District Office's selection panel's response to the EEOC's Complaints Processing and Compliance Division, in which it stated that the panel members selected candidates who were the most qualified based on experience and education and that Bennett lacked the prior related investigative experience that other applicants possessed; (3) Gosa's response to Bennett's interrogatories, in which he stated that he recalled seeing some documentation about Bennett's disability but that the documentation did not denote that Bennett met the ADA's definition for disabled; (4) Files's response to Bennett's interrogatories, in which he stated that he did not notice any reference to Bennett's disability in the application and that he focused on the relevant past job experience; (5) Kennedy's response to Bennett's interrogatories, in which he stated that he did not recall seeing any information relating to Bennett's disability; and (6) the EEOC's appellate decision affirming the Administrative Law Judge's decision to deny Bennett's claim because he was not disabled within the meaning

---

selected Valenzuela for consideration.

of the ADA, and, moreover, because the EEOC had articulated legitimate, nondiscriminatory reasons ("LNDR") for not selecting Bennett and Bennett failed to show that those reasons were a pretext for discrimination.

The EEOC responded with its own motion for summary judgment. The EEOC highlighted that the vacancy announcement listed "ability to communicate in writing" as one of the four criteria used to evaluate an applicant. In addition to the information about the hiring process discussed earlier, the EEOC asserted that although Thomas deemed Bennett eligible as a noncompetitive candidate, the panel ultimately rejected his application because it contained "numerous and pervasive" grammatical and spelling errors. Moreover, the EEOC contended that Bennett's investigative experience was not as current as that of other candidates. According to the EEOC, even if Bennett could establish a prima facie case of discrimination, its two reasons for not hiring him were LNDRs and Bennett could not show that they were a pretext for discrmination.

As for Bennett's claim that the EEOC violated 42 U.S.C. § 12112(d), the EEOC asserted that this statutory provision did not address the information that the EEOC required, and, at any rate, Bennett voluntarily submitted the information about his disability in order to gain an advantage in the application process. The EEOC claimed that the only information it required was documentation that

9

showed that the applicant met the eligibility requirements of the VRA. Regarding the alleged violation of § 12112(d)(3)(B), the EEOC argued that this subsection did not apply to Bennett because the plain language limited the subsection's reach to "applicants who have been offered a job" and "existing employees." The EEOC contended that Eleventh Circuit precedent holds that information an applicant or employee voluntarily discloses is not protected under this section of the ADA, Cash v. Smith, 231 F.3d 1301 (11th Cir. 2000). Moreover, the EEOC argued that this subsection should not provide a private right of action when, as here, the plaintiff was not injured by any alleged disclosure. Finally, the EEOC asserted that Bennett's claim under § 12112(d) should be dismissed because he failed to exhaust his administrative remedies as to that claim.

The EEOC attached several exhibits, including: (1) the vacancy announcement, which listed "ability to communicate in writing" as one of the four selection criteria; (2) Bennett's application, which contained numerous errors such as run-on sentences, sentence fragments, typographical errors, and lack of subject-verb agreement; (3) transcripts of the hearing before the EEOC addressing Bennett's ADA claims; and (4) a memorandum from the selection panel to Pierre recommending several candidates for consideration, including two VRA and Schedule A applicants.

The transcripts from the EEOC hearing included the testimony of several panel members. In his testimony, Files recounted the errors in the first narrative paragraph of Bennett's application and concluded that he would have had problems with Bennett's ability to communicate in writing. Gosa testified that Bennett's application was disorganized, contained numerous errors, and "jumped out at him" because of the errors. Bennett responded to the EEOC's motion by presenting the same arguments he had presented in his initial motion for summary judgment.

The district court denied Bennett's motion for summary judgment and granted the EEOC's motion for summary judgment. The court consolidated Bennett's pro se complaint into three claims: (1) discrimination based on disability in violation of the Rehabilitation Act and ADA; (2) a pre-employment disability inquiry in violation of 42 U.S.C. § 12112(d)(2); and (3) a violation of the confidentiality provisions of § 12112(d)(3) during the selection process. As for Bennett's discrimination claim, the court held that even assuming that Bennett could establish a prima facie case, the EEOC offered an LNDR and Bennett failed to show that the LNDR was a pretext for discrimination. The court found that the record supported the EEOC's LNDR because the vacancy announcement listed the "ability to communicate in writing" as one of the four selection criteria and Bennett's application was replete with grammatical errors. The court rejected

11

Bennett's attempt to show pretext by alleging that none of the VRA and Schedule A applicants was interviewed because the undisputed evidence showed that the panel recommended two VRA and Schedule A applicants.

As for Bennett's claim under § 12112(d)(2), the court first noted its "serious doubts" that the information required by the EEOC fell within the parameters of this section and then found that Bennett was not forced to disclose information related to his disability. The court stated that Bennett chose to seek noncompetitive status and thereby chose to disclose that he had a disability. The court noted that our decision in <u>Cash</u> held in similar circumstances that a plaintiff's voluntary disclosure of disability information is not governed by § 12112(d)(2). Finally, the court rejected Bennett's final claim because it found that § 12112(d)(3) was inapplicable to Bennett because he was neither a "job applicant to whom an offer had been made" nor an "employee." Moreover, the court found that <u>Cash</u> also dictated that voluntary disclosures were not within the scope of § 12112(d)(3). Bennett now appeals.

## II. Standard of Review

We review "the district court's grant of summary judgment <u>de novo</u>, viewing the materials presented and drawing all factual inferences in the light most favorable to the non-moving party." <u>D'Angelo v. ConAgra Foods, Inc.</u>, 422 F.3d

12

1220, 1225 (11th Cir. 2005) (citation omitted).  Summary judgment is proper when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The movant bears the burden of demonstrating the satisfaction of this standard, by presenting 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute."  Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  We construe pro se briefs liberally but will not act as de facto counsel for a pro se litigant.  GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).

### III. Discussion

On appeal, Bennett argues that the district court erred in concluding that: (1) the EEOC did not violate the Rehabilitation Act and the ADA by subjecting Bennett to discrimination based on his disability status; (2) the EEOC did not violate § 12112(d)(2) when it made a pre-employment inquiry about his disability; and (3) the EEOC did not violate § 12112(d)(4) when it failed to keep records containing information about Bennett's disability separate from the remainder of his application.  Bennett also refers to a claim under the Privacy Act, 5 U.S.C. § 552a, but as noted earlier, Bennett has waived any claim related to the Privacy

13

Act.

"The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). When determining liability under the Rehabilitation Act, we use the same standard we use under the ADA, and cases interpreting each are precedent for the other. Cash, 231 F.3d at 1305. Because Bennett primarily discusses the ADA, we refer to the ADA rather than to both acts.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). For claims under the ADA, we apply the familiar McDonnell Douglas burden shifting framework. Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

First, the plaintiff must establish a prima facie case under the ADA. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). If the plaintiff successfully shows a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination by producing evidence that it

14

had an LNDR for its action.  Id.  If the employer proffers an LNDR, the plaintiff must show that the LNDR is a pretext for discrimination.  Id.

To show pretext, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision.  The plaintiff may succeed in this either directly by persuading the court that a discriminatory reason more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Jackson v. Ala. State Tenure Comm., 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation and alterations omitted); Wascura v. City of South Miami, 257 F.3d 1238, 1243 (11th Cir. 2001). "Conclusory allegations of discrimination, without more, are insufficient to raise an inference of pretext or intentional discrimination when a defendant has offered extensive evidence of [LNDRs] for its actions."  Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996) (citation and alteration omitted).

Even assuming, as the district court and EEOC did, that Bennett presented a prima facie case, the EEOC provided an LNDR for its decision not to hire Bennett and Bennett failed to show that the LNDR was a pretext for discrimination.  The EEOC contends that it did not select Bennett because his application demonstrated that he did not meet at least one of the four selection criteria listed on the vacancy

15

announcement: "the ability to communicate in writing."  Bennett's application was replete with typographical errors, run-on sentences, and sentence fragments that made the application difficult to understand.  Bennett responds that the EEOC discriminated against him, but he fails to offer any evidence that the EEOC's LNDR was a pretext for discrimination.[8]  Therefore, the district court properly granted summary judgment in favor of the EEOC.

Next, Bennett argues that the EEOC violated 42 U.S.C. § 12112(d)(2) by making a pre-employment disclosure of his disability.  Title 42 U.S.C. § 12112(d)(2) provides:

> (d) Medical examinations and inquiries
>     . . . .
>         (2) Preemployment
>
>             (A) Prohibited examination or inquiry
>             Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.
>
>             (B) Acceptable inquiry
>             A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

42 U.S.C. § 12112(d)(2)(A)-(B).  The EEOC regulations also allow employers to

---

[8] To the extent that Bennett argues that the panel's decision not to recommend any VRA and Schedule A applicants for the next stage of the selection process is evidence of discrimination, the record does not support Bennett's assertion.  As noted earlier, the panel recommend two VRA and Schedule A applicants for the next stage.

invite individuals to identify themselves as individuals with disabilities as required to satisfy the affirmative action requirements of the Rehabilitation Act. 29 C.F.R. Pt. § 1630, App. (addressing § 1630.14(a)).

We have not decided and do not decide now whether a plaintiff has a private right of action under 42 U.S.C. § 12112(d)(2). Even assuming that Bennett has a private right of action under this sub-section, the sub-section is inapplicable here. As evidenced by the vacancy announcement and Bennett's application, the EEOC never inquired into whether Bennett had a disability or as to the nature or severity of the disability that qualified Bennett for the VRA program. The only information about Bennett's disability came from his voluntary disclosure, which is not covered by 42 U.S.C. § 12112(d)(2). Therefore, the EEOC did not violate 42 U.S.C. § 12112(d)(2).[9]

Finally, Bennett contends that the EEOC violated 42 U.S.C. § 12112(d)(3) and (4). We do not have any controlling precedent in this circuit dealing with those subsections, but by their plain language, they do not apply to Bennett. Subsection (d)(3) applies only to job applicants to whom "an offer of employment

---

[9] Despite Bennett's arguments, Cash does not dictate a different result. Bennett correctly contends that he and Cash differ because he was an applicant and Cash was an employee. Cash, 231 F.3d at 1303. This distinction is irrelevant, however, when determining whether 42 U.S.C. § 12112(d)(3) has been violated. The pertinent inquiry is into whether the disclosure of the plaintiff's disability resulted from an impermissible inquiry or medical examination. Id. at 1307. As in Cash, this case involved a voluntary disclosure of disability information. Id. Therefore, Cash compels the result we reach here.

17

has been made" and (d)(4) applies only to employees.[10]  Because, the EEOC never offered Bennett employment and he never became an employee of the EEOC, these sub-sections do not apply to him.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

[10] In pertinent part, 42 U.S.C. § 12112(d)(3) reads: "A covered entity may require a medical examination <u>after an offer of employment has been made to a job applicant</u> and prior to the commencement of the employment duties of such applicant . . . ."  42 U.S.C. § 12112(d)(3) (emphasis added).  In pertinent part, 42 U.S.C. § 12112(d)(4)(A) reads: "A covered entity shall not require a medical examination and shall not make inquiries of <u>an employee</u> as to whether such <u>employee</u> is an individual with a disability or as to the nature or severity of the disability . . . ."  42 U.S.C. § (d)(4)(A) (emphasis added).