[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10011
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-01155-RWS

JORDAN E. LUBIN,
Chapter 7 Trustee,

Plaintiff-Appellant,

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Integrity Bank,

Intervenor Plaintiff - Appellee,

versus

STEVEN M. SKOW,
SUZANNE LONG, et al.,

Defendants-Appellees.

_____

No. 10-10068
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-01156-RWS

In RE:

INTEGRITY BANCSHARES, INC.,

                                                                Debtor.
_____

JORDAN E. LUBIN,
Chapter 7 Trustee,

                                    Plaintiff-Appellant,

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Integrity Bank,

                          Intervenor Plaintiff-Appellee,

versus

CINCINNATI INSURANCE COMPANY,
STEVEN SKOW, et al.,

                                 Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____
(June 14, 2010)

Before BIRCH, MARTIN and FAY, Circuit Judges.

PER CURIAM:

In this case, the bankruptcy trustee for a holding company seeks to impose liability on the officers of both the holding company and its failed subsidiary bank where the subsidiary bank is in receivership. Because the Complaint does not sufficiently allege direct harm to the holding company, the trustee lacks standing to sue the officers of the bank. Also, although the trustee has standing to sue officers of the holding company, the Complaint fails to plead a claim for which relief may be granted on that issue. We affirm the district court's dismissal as to all defendants.

I.

Integrity Bancshares, Inc. is a Georgia bank holding company ("Holding Company"). It is the parent of Integrity Bank ("Bank"), which purported to be a full service community bank. Both entities were incorporated in Georgia. Defendant Steven Skow was President and Chief Executive Officer of both the Holding Company and Bank.[1] Defendant Suzanne Long was Senior Vice President and Chief Financial Officer of the Holding Company, and oversaw the financial operations and conditions of both the Holding Company and the Bank.[2]

---

[1]The Complaint alleges that Skow was an officer and director of the Holding Company. The district court also found that he was President and CEO of the Bank.

[2]Based on submissions in the record, we believe that Long was also the Chief Financial Officer of the Bank. The Complaint refers only to her capacity as an officer of the Holding Company, and therefore we confine our discussion to that role.

3

Defendant Douglas Ballard was Senior Vice President and Senior Lending Officer of the Bank. Defendant Robert Skeen was Executive Vice President and Senior Lending Officer of the Bank prior to Ballard.

Through an $11 million initial offering in 1999, trust preferred offerings exceeding $34 million in 2003 and 2006, and a secondary equity offering of $15 million in 2005, the Holding Company raised funds to capitalize the Bank. The Bank grew quickly on inception, with loan assets exceeding $1 billion, and customer deposits of $1.1 billion by September 2007.

Despite the Bank's early growth, its loan and underwriting practices, including its concentration of loans to commercial and real estate developers, produced significant losses for the Bank in 2007 as real estate markets collapsed. By October 2007, almost ten percent of the gross amount of the Bank's outstanding loans were delinquent. In February 2008, the Georgia Department of Banking and Finance closed the Bank and placed it under Federal Deposit Insurance Corporation ("FDIC") supervision.

The Holding Company eventually filed for bankruptcy. The plaintiff, Jordan E. Lubin, is the Chapter 7 Trustee ("Trustee") of the Holding Company. He filed an adversary proceeding against the defendants seeking damages for breach of fiduciary duties as well as for negligence. The Complaint generally

4

alleges that, through mismanagement and risky lending practices, the defendants harmed the Holding Company and endangered the capital it provided to the Bank. The Trustee claims that because the Holding Company raised the money to increase the Bank's lending capital and expand its operations mostly through debt issuances, those debt issuances "materially encumbered and put at risk the equity interests of the [Holding Company's] stockholders." As a result, the Holding Company and its stockholders "had and have direct equitable, if not legal, interests in the business practices, proper management, and profits of the Bank."

The FDIC intervened, asserting sole ownership under federal law of the claims against the defendants. The defendants and FDIC filed Motions to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for lack of standing and failure to state a claim. The district court granted the Motions.[3] We review de novo a district court's dismissal of a complaint, assume all factual allegations in the complaint are true, and give the plaintiff the benefit of reasonable inferences. Hazewood v. Found. Fin. Group, LLC, 551 F.3d 1223, 1224 (11th Cir. 2008).

---

[3]The defendants filed a Motion to Dismiss the Complaint, but the Trustee subsequently filed a First Amended Complaint. Because the district court granted the defendants' and FDIC's Motions to Dismiss the First Amended Complaint, it denied as moot the defendants' Motion to Dismiss the original Complaint.

The Complaint fails to segregate the claims against the Bank's officers from those against the Holding Company's officers. The 12(b)(6) analysis is more difficult because of this. Different laws govern these separate positions. That being the case, we are required to analyze the allegations against the Bank's officers separately from those against the Holding Company's officers.

## II.

First, we examine the allegations against the Bank's officers. Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), when the FDIC is appointed receiver of a bank, it succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder . . . of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i). Without direct precedent from this Court on the issue,[4] the district court concluded that FIRREA grants the FDIC ownership over all shareholder derivative claims against the Bank's officers. Lubin v. Skow, No. 1:09-CV-1155-RWS, 2009 WL 4641761, at *3–4 (N.D. Ga.

---

[4]In our review of another district court decision on this issue, we did not affirm or reverse that court's conclusion that shareholder derivative claims against a bank in receivership belong exclusively to the FDIC, because we decided the case on other grounds. Brandt v. Bassett (In re Se. Banking Corp.), 69 F.3d 1539, 1552–53 (11th Cir. 1995) (after the district court dismissed the direct suit as an improper derivative claim, the Trustee filed a separate derivative claim "reassert[ing] . . . essentially the same action in another form," but was barred from proceeding by collateral estoppel).

Nov. 30, 2009). Considering that shareholder derivative actions "enforce a corporate cause of action," and any recovery is "in favor of the corporation," Price v. Gurney, 324 U.S. 100, 105, 65 S. Ct. 513, 516 (1945), we agree with the district court's interpretation of FIRREA. See also Pareto v. FDIC, 139 F.3d 696, 700 (9th Cir. 1998) (concluding that the plain language of § 1821 "vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC"). The question then becomes whether the claims against the Bank's officers are derivative claims.

Where a shareholder alleges devaluation of shares due to corporate mismanagement, that shareholder lacks standing to sue the corporate officers directly. Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. Unit B Apr. 1981).[5] The shareholder's sole recourse is to bring a derivative action against the officers on behalf of the corporation. Id. Particularly where, as here, the harm arises from an alleged breach of fiduciary duty, Georgia law[6] generally requires the claim to be brought in a derivative action. Phoenix Airline Servs., Inc. v. Metro Airlines,

---

[5]In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[6]We apply the law of the state of incorporation to analyze state law corporate claims. See Stepak v. Addison, 20 F.3d 398, 403 (11th Cir. 1994) (applying Delaware law to evaluate the sufficiency of the allegations in a derivative claim); Jacobs v. Adams, 601 F.2d 176, 179–80 (5th Cir. 1979) (applying Florida law to determine shareholder standing in a derivative suit).

Inc., 397 S.E.2d 699, 701 (Ga. 1990). Thus, if a shareholder's investment is frittered away by corporate mismanagement, only the corporation can recover. Greenwood v. Greenblatt, 161 S.E. 135, 138 (Ga. 1931).

The Complaint alleges that the defendants Ballard, Skeen, and Skow, as officers of the Bank, impaired the Bank's working capital and wasted its assets so as to cause economic loss to the Holding Company as well as the Holding Company's ultimate bankruptcy. This is a classic derivative harm, as "[t]he wrong done by the defendants, if any, was a wrong done to the corporation." Greenwood, 161 S.E. at 136. Because the FDIC succeeded to all of the Bank's legal rights under FIRREA, only the FDIC can sue Bank officers for this alleged breach of fiduciary duty to the Bank. The Trustee therefore lacks standing to bring a derivative suit against the Bank's officers.

However, if the Trustee can establish a direct harm to the Holding Company caused by the Bank officers, that harm would be separate from the derivative harm. If the Trustee were seeking to enforce such a claim, FIRREA would not be a bar to standing. See FDIC v. Jenkins, 888 F.2d 1537, 1545 (11th Cir. 1989) (FIRREA does not prohibit shareholders from "proceeding against solvent third-parties in non-derivative shareholder suits"). However, for such a claim for direct relief to exist, it must meet this Court's pleading requirements.

Federal Rule of Civil Procedure 8(a)(2) requires pleadings to include a "short and plain statement" demonstrating that the plaintiff is entitled to relief. However, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ---U.S.----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).[7] Claims for relief are facially plausible where there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. The district court correctly observed that whether the claims alleged in the Complaint are direct or derivative is a legal, not factual, determination, Lubin, 2009 WL 4641761, at *5, which we are not bound to accept. See Iqbal, 129 S. Ct. at 1949.

Under Georgia law, a direct claim is distinguishable from a derivative claim if the shareholder is "injured in a way which is different from the other shareholders or independently of the corporation." Grace Bros. v. Farley Indus.,

---

[7]The Trustee argues that Iqbal is limited to cases resolving qualified immunity against a constitutional tort claim. We have consistently applied Iqbal beyond that limited scope. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1266–70 (11th Cir. 2009) (applying Iqbal's pleading standard to claims brought under the Alien Tort Statute and Torture Victim Protection Act); see also, e.g., Edwards v. Prime, Inc., 602 F.3d 1276, 2010 WL 1404280, at *10–18 (11th Cir. Apr. 9, 2010) (applying Iqbal to federal racketeering and labor claims); Harrison v. Benchmark Elec. Huntsville, Inc., 593 F.3d 1206, 1214 (11th Cir. 2010) (applying Iqbal to claims brought under the Americans with Disabilities Act).

Inc., 450 S.E.2d 814, 816 (Ga. 1994). While the Complaint generally alleges that the Bank officers caused a direct harm to the Holding Company, "[i]t is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision." Phoenix Airline Servs., 397 S.E.2d at 701; accord Gaudet v. United States, 517 F.2d 1034, 1035 (5th Cir. 1975) ("It is the substance of the claim and not the language used in stating it which controls."). Within the four corners of the Complaint, the Trustee has only alleged a derivative claim disguised as a direct claim.

The alleged harm to the Holding Company stems from the Bank officers' management of Bank assets.[8] This harm is inseparable from the harm done to the Bank. See Greenwood, 161 S.E. at 138. That the Bank officers' poor business choices reduced the value of the Holding Company's investment does not alter the fact that the harm is decidedly a derivative one. Stevens, 643 F.2d at 1080; see also Greenwood, 161 S.E. at 138 (no direct action exists where the shareholders' investment is "depreciated or rendered valueless").

While the Complaint alleges that the Holding Company suffered a unique harm because it assumed $34 million of debt to finance the Bank's expanded

---

[8]By the language of the Complaint, it was the Bank officers' decisions to extend "unreasonably risky and unlawful loans" that ultimately interfered with the "proper management and profitable operation of the Bank."

10

operations, debt is not an intrinsic harm. The Bank's insolvency, which precluded the Holding Company from repaying the $34 million, is what forced the Holding Company into bankruptcy. In the Complaint, the Trustee acknowledges that repayment of this debt depended upon the success of the Bank. As the Seventh Circuit observed, "the fact that the plaintiffs borrowed money to [fund their investment] and are now on the hook to pay those personal debts does not alter the nature of their claims." Massey v. Merrill Lynch & Co., 464 F.3d 642, 648 (7th Cir. 2006). Thus, the Holding Company's harm, and even its ultimate bankruptcy, is derivative of the harm to the Bank.

Because the Complaint alleges derivative harm, recovery from which is preempted by FIRREA, the district court properly dismissed the Complaint against Ballard, Skeen, and Skow as officers of the Bank.

### III.

We conduct a different analysis for defendants Skow and Long as officers of the Holding Company because FIRREA does not apply.[9] Under Georgia law, a corporation has standing to sue its officers for "neglect of, failure to perform, or other violation of his duties in the management of the corporation or in the

---

[9]Under FIRREA, the FDIC succeeds to the rights of the Bank only. Therefore, where the Trustee is suing to vindicate the rights of the Holding Company against its own officers, FIRREA is not invoked.

disposition of corporate assets." O.C.G.A. § 14-2-831(a)(1)(A). Bankruptcy trustees succeed to all rights of the debtor and have standing to sue if the debtor, in this case the Holding Company, would otherwise have standing. See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1149 (11th Cir. 2006) (referring to 11 U.S.C. §§ 541(a)(1) and 323); see also Greenwood, 161 S.E. at 139 ("An action against the directors or officers of a corporation for losses happening to it in consequence of their gross negligence, their habitual inattention to their duties, or their fraud or mismanagement, must be brought by the trustees in bankruptcy of the corporation.").

To state a claim for breach of fiduciary duty against officers of a Georgia corporation, the complaint must sufficiently plead: "'(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach.'" Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 958–59 (11th Cir. 2009) (quoting SunTrust Bank v. Merritt, 612 S.E.2d 818, 822 (Ga. Ct. App. 2005)). Corporate officers "occupy a fiduciary relationship to the corporation and its shareholders, and are held to the standard of utmost good faith and loyalty." Quinn v. Cardiovascular Physicians, P.C., 326 S.E.2d 460, 463 (Ga. 1985). Skow and Long were officers of the Holding Company, and thus owed it a fiduciary duty. See O.C.G.A. § 14-2-842(a).

12

However, the Complaint fails to sufficiently plead a breach of this duty. The fiduciary duty corporate officers owe their corporation is to execute their responsibilities "(1) [i]n a manner [they] believe[] in good faith to be in the best interests of the corporation; and (2) [w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances." Id. The Complaint alleges that the officers of the Holding Company "caus[ed], authoriz[ed], approv[ed], ratif[ied] or otherwise allow[ed] the Bank to persist in the deficient condition and unsound practices," and that they "failed to exercise that degree of care and competence required by ordinarily prudent persons holding similar positions under similar circumstances." The Complaint simply recites the elements of breach of duty in the "unadorned, the-defendant-unlawfully-harmed-me" manner Iqbal prohibits. Iqbal, 129 S. Ct. at 1949.

The district court concluded that even if some of the defendants, such as Skow and Long, owed a fiduciary duty to the Holding Company, the Complaint still only alleges a breach of duty in their roles as officers of the Bank. We will give the Trustee the benefit of the inference that Skow and Long, as officers of the Holding Company, had oversight responsibilities for the Bank, and thus are partly to blame for the Bank's mismanagement. While the losses of the Bank are staggering, a simple recitation of those amounts together with generalized

13

statements of blame do not state a legal claim for breach of fiduciary duties to the Holding Company. We express no opinion about whether Skow or Long might have breached their duties as Holding Company officers by failing to inform the Holding Company board about bank mismanagement or by failing to influence the Holding Company (as sole shareholder of the Bank) to respond to this mismanagement by changing the Bank management. Neither of these allegations, nor any other allegations regarding these defendant's conduct as Holding Company officers, appear in the Complaint.

Because the Complaint fails to plead sufficient facts connecting any act or omission by the defendants with a harm to the Holding Company that is distinct from the harm the Holding Company suffered when its investment in the Bank soured, the Complaint states no claim for which the Trustee may recover.

We AFFIRM the district court's grant of the defendants' and the FDIC's motions to dismiss.