[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 18-11121, No. 18-12277

_____

D.C. Docket No. 8:17-cv-00977-MSS-CPT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

KIMBERLY LOWE,

Intervenor-Appellant,

versus

STME, LLC,
d.b.a. Massage Envy-South Tampa,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(September 12, 2019)

Before JORDAN, GRANT and HULL, Circuit Judges.

HULL, Circuit Judge:

In this consolidated appeal, the plaintiff Equal Employment Opportunity Commission ("EEOC") and intervenor Kimberly Lowe appeal the entry of judgment for defendant STME, LLC, d.b.a. Massage Envy-South Tampa ("Massage Envy"), on their employment discrimination claims brought under the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2009.  Although the EEOC brought only disability discrimination claims, it is undisputed that Lowe was not actually disabled when Massage Envy terminated her employment.  The EEOC, however, alleged that Massage Envy violated the ADA because it fired Lowe when she refused to cancel her trip to Ghana, a country in West Africa.  Massage Envy's stated reason for the termination was its fear that Lowe might contract and later develop Ebola due to her Ghana travel.  This case involves issues of first impression as to the meaning of "regarded as having such an impairment," which is a statutory phrase contained in 42 U.S.C. § 12102(1)(C).

After review and oral argument, we conclude that, even construing the statute broadly, the terms of the ADA protect persons who experience discrimination because of a current, past, or perceived disability—not because of a

2

potential future disability that a healthy person may experience later.  Accordingly, we affirm the district court's final judgment in favor of defendant Massage Envy.

## I. FACTUAL BACKGROUND

Because this appeal arises at the motion-to-dismiss stage, we accept as true the facts as alleged in the EEOC's complaint.  See Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016).

### A.    Lowe's Employment at Massage Envy

Massage Envy is a wellness franchise that offers massage and skin care services.  In January 2012, Kimberly Lowe began working as a massage therapist at a Massage Envy located in Tampa, Florida.  At all times relevant to this case, Lowe did not have a disability.  Rather, she was both capable of performing her job duties and did perform her job duties in a satisfactory manner.

In September 2014, Lowe asked Massage Envy for time off so that she could visit her sister in Ghana, a country located in West Africa.  Massage Envy's business manager, Roxanna Iorio, initially approved Lowe's request.  However, on October 22, 2014, three days before her scheduled trip, one of Massage Envy's owners, Ronald Wuchko, met with Lowe and told her that she would be fired if she went ahead with her travel plans.

Owner Wuchko was concerned that Lowe would become infected with the Ebola virus if she traveled to Ghana and would "bring it home to Tampa and infect

3

everyone." At that time in 2014, there was an Ebola epidemic in Guinea, Liberia, and Sierra Leone, three other nearby countries in West Africa. According to Wuchko, he was worried about the "potentially catastrophic consequences that an outbreak of Ebola could pose to America." Because Lowe refused to cancel her trip, Wuchko terminated her employment during that October 22 meeting and before she left.

Lowe then traveled to Ghana as planned. She did not contract Ebola while there. In fact, as it turned out, there was no Ebola outbreak at all in Ghana in 2014.[1] Upon her return from West Africa, Lowe did not work at Massage Envy and was not otherwise permitted to keep her massage appointment bookings at Massage Envy.

## B.    Lowe's Charge and the EEOC's Investigation

In November 2014, Lowe filed a Charge of Discrimination with the EEOC, asserting that Massage Envy terminated her employment because owner Wuchko believed that she would come into contact with a person having Ebola while in Ghana. Based on that allegation, Lowe claimed that she was discriminated against

---

[1]While the West Africa Ebola epidemic spread to other parts of Africa, Europe, and the United States, the epicenter of the outbreak was in the countries of Guinea, Sierra Leone, and Liberia in West Africa. 2014-2016 Ebola Outbreak Distribution in West Africa, Centers for Disease Control and Prevention, https://www.cdc.gov/vhf/ebola/history/2014-2016-outbreak/index.html (last visited on Sept. 12, 2019). Owner Wuchko's fear was unfounded. Although Ghana is nearby and also in West Africa, there were no confirmed cases of Ebola in Ghana during the 2014 outbreak.

4

because Massage Envy "perceived [her] as disabled or . . . as having [the] potential to become disabled," in violation of the ADA.

The EEOC investigated Lowe's charge.  Almost two years later, on September 6, 2016, the EEOC issued a Letter of Determination finding that there was "reasonable cause" to believe that Massage Envy terminated Lowe's employment because it "regarded" her as disabled, in violation of the ADA.  The EEOC invited Massage Envy to engage in conciliation efforts, but those efforts failed.

## II.  PROCEDURAL HISTORY

On April 26, 2017, the EEOC filed this lawsuit, alleging in the operative amended complaint that "Ebola is a physical impairment that substantially limits those infected in one or more major life activity, including, but not limited to, circulatory function and immune system function."  As such, the EEOC alleged that: (1) Massage Envy violated the ADA, 42 U.S.C. § 12112(a), by "terminating and not permitting Lowe to return to work upon her return from Ghana because it regarded her as disabled"; and (2) Massage Envy violated the ADA, 42 U.S.C. § 12112(a) & (b)(4), "by terminating and not permitting Lowe to return to work upon her return from Ghana based upon Massage Envy's fears and beliefs about Ebola and based upon her association with people in Ghana whom Massage Envy believed to be disabled by Ebola."

5

Later, in the district court proceedings, the EEOC informed the district court that it was "not alleg[ing] that Massage Envy 'failed to reinstate or rehire' Lowe" in its amended complaint. Relying on that representation, the district court considered the EEOC's claims only to the extent they applied to Lowe's October 22 termination, not to any later refusal to rehire her. We do the same on appeal.[2]

On June 20, 2017, Lowe moved to intervene in the lawsuit. In her intervenor complaint, Lowe recounted the same facts surrounding her termination as the EEOC set forth in its amended complaint. Based on those allegations, Lowe claimed that Massage Envy's firing of her violated the ADA and the Florida Civil Rights Act of 1992 ("FCRA") because the termination decision was based on unfounded fears and beliefs about Ebola and Lowe's risk for the disease. Lowe's claims were based on the same theory that the EEOC advanced—that Massage Envy perceived her as having a disability and fired her due to that perceived disability.

Thereafter, in July 2017, Massage Envy moved to dismiss the EEOC's amended complaint for failure to state a claim and failure to exhaust administrative remedies. See Fed. R. Civ. P. 12(b)(6). While that Rule 12(b)(6) motion was

---

[2]On appeal, the EEOC argues that the district court erred in cabining its claims to Lowe's termination. We will not consider this argument because whatever error, if any, the district court committed by not considering the EEOC's claims as to Massage Envy's failure to reinstate or rehire Lowe was invited by the EEOC. See United States v. Stone, 139 F.3d 822, 838 (11th Cir. 1998) (The doctrine of invited error precludes appellate review "when a party induces or invites the district court into making an error.").

6

pending, in October 2017, the EEOC moved to file a second amended complaint, in which it sought to raise an ADA unlawful interference claim. In that new claim, the EEOC alleged that when owner Wuchko told Lowe that she would be fired if she did not cancel her Ghana trip, Massage Envy coerced, intimidated, and threatened Lowe and interfered with her exercise and enjoyment of rights under the ADA, in violation of 42 U.S.C. § 12203(b). The EEOC suggested that Lowe's interfered-with ADA rights were: (1) the right to a reasonable accommodation if Lowe actually developed Ebola; and (2) the right to associate with disabled persons, i.e., people in Ghana with Ebola.

In a February 15, 2018 order, the district court: (1) granted Massage Envy's motion to dismiss the EEOC's amended complaint; (2) denied the EEOC's motion to file a second amended complaint as futile; and (3) directed the clerk to terminate all pending motions as moot, which included Lowe's still-pending motion to intervene. As to the merits of the ADA claims, the district court dismissed the EEOC's "regarded as" disabled claim because Massage Envy did not perceive Lowe as having Ebola at the time it fired her. In so ruling, the district court declined to expand the ADA's "regarded as having" prong of the disability definition to cases like this one, in which an employer fires an employee at a time when it "perceives [the] employee to be presently healthy with only the potential to become disabled in the future due to voluntary conduct." The district court also

7

concluded that the EEOC's association claim lacked merit because the EEOC did not allege that Massage Envy knew that Lowe had an existing or past association with any person disabled by Ebola at the time it fired her.

As to the EEOC's proposed second amended complaint, the district court denied the EEOC's request to bring an unlawful interference claim because, inter alia, any such amendment would be futile, as Lowe had no existing rights under the ADA when she was fired because she was not disabled and had not associated with anyone who was disabled. Thereafter, the district court entered final judgment in favor of Massage Envy. This appeal followed.

## III. STANDARD OF REVIEW

We review de novo a district court's order granting a motion to dismiss for failure to state a claim. Boyle v. City of Pell City, 866 F.3d 1280, 1286 (11th Cir. 2017). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim is facially plausible when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Boyle, 866 F.3d at 1286.

We also review <u>de novo</u> questions of law, such as the construction of a statute.  <u>Albra v. Advan, Inc.</u>, 490 F.3d 826, 829 (11th Cir. 2007).  We "may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the [district court]." <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007).

## IV. "REGARDED AS HAVING" A DISABILITY

In interpreting the ADA, we are guided by the traditional canons of statutory construction.  "Our 'starting point' is the language of the statute itself."  <u>Harrison v. Benchmark Elecs. Huntsville, Inc.</u>, 593 F.3d 1206, 1212–14 (11th Cir. 2010). We "assume that Congress used the words of the statute as they are commonly and ordinarily understood and must construe the statute so each of its provisions is given full effect."  <u>United States v. McLymont</u>, 45 F.3d 400, 401 (11th Cir. 1995). To that end, "[w]e do not look at one word or term in isolation, but instead we look to the entire statutory context."  <u>Harrison</u>, 593 F.3d at 1212 (quotations omitted). We now set forth the statutory text at issue here.

### A.    Statutory Text

Under § 12112(a) of the ADA, an employer is generally prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges

9

of employment." 42 U.S.C. § 12112(a). To state a disability discrimination claim, a claimant must allege that she was a "qualified individual" who suffered an adverse employment action because of her "disability" as those terms are defined by the ADA. Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1267–68 (11th Cir. 2014).

In § 12102(1), the ADA defines the statutory term "disability," with respect to an individual, to mean:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1) (emphasis added). "Accordingly, to fall within this definition one must have an actual disability (subsection (A)), have a record of a disability (subsection (B)), or be regarded as having one (subsection (C))." Sutton v. United Air Lines, Inc., 527 U.S. 471, 478, 119 S. Ct. 2139, 2144 (1999), abrogated on other grounds by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).

In turn, paragraph 3 in § 12102(3)(A), describes "regarded as having such an impairment," for purposes of § 12102(1)(C), as follows:

> For purposes of paragraph (1)(C): . . . An individual meets the requirement of "being regarded as having such an impairment" if the

10

individual establishes that he or she has been subjected to an action prohibited under [the ADA] <u>because of an actual or perceived physical or mental impairment</u> whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A) (emphasis added).  This provision does not apply to "impairments that are transitory and minor."  <u>Id.</u> § 12102(3)(B).  Taking these definitions together, an employee has a "disability" under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor.

The relevant time period for assessing the existence of a disability, so as to trigger the ADA's protections, is the time of the alleged discriminatory act.  <u>See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.</u>, 507 F.3d 1306, 1312 (11th Cir. 2007) (assessing parallel provision of the Rehabilitation Act);[3] <u>Cash v. Smith</u>, 231 F.3d 1301, 1306 n.5 (11th Cir. 2000) ("The employment action that Cash is complaining of occurred in late April and early May of 1998, and we evaluate her disability as manifested at that time."); <u>EEOC v. Chevron Phillips Chem. Co.</u>, 570 F.3d 606, 618 (5th Cir. 2009) ("In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action.").

---

[3]The Rehabilitation Act of 1973, 29 U.S.C. § 701 <u>et seq.</u> applies the same standards and follows the same analysis as claims under the ADA.  <u>Sutton v. Lader</u>, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999).

**B.**    **Analysis of "Regarded As Having" a Disability**

There is no dispute that Lowe was a qualified individual and she suffered an adverse employment action.  Rather, the main question is whether Lowe was "disabled" within the meaning of the ADA at the time of Massage Envy's termination of her employment, that is, before her trip to Ghana.  Lowe undisputedly did not have an actual existing disability or a record of disability when she was fired.  Thus, the issue here becomes solely whether she was "regarded as having" a disability when fired.

The EEOC contends that Lowe meets the "regarded as" prong of the disability definition because Massage Envy regarded her (or perceived her) as having a disability due to its belief that she would contract Ebola in the future while traveling in Ghana.  In reply, Massage Envy stresses that owner Wuchko did not perceive Lowe as having Ebola; rather he perceived her as having the potential or possibility of becoming infected in the future if she traveled to Ghana (i.e., becoming disabled in the future).

For several reasons, we must conclude that the disability definition in the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future due to the voluntary conduct of overseas travel.  The EEOC's claim does not fall within the scope of the "regarded as having" prong of the ADA's disability definition.

12

First, we do not read the "regarded as having" prong in § 12102(1)(C), as described in § 12102(3)(A), in isolation.  Rather, the ADA's definition of "disability" in § 12102(1) provides that a disability is a present "physical or mental impairment," "a record of <u>such</u> an impairment," or "being regarded as having <u>such</u> an impairment."  See <u>id.</u> § 12102(1)(A)–(C) (emphasis added).  It is well settled that "impairment" in the first "actual disability" prong, § 12102(1)(A), is limited to impairments that exist at the time of the adverse employment action and does not include impairments that manifest after the alleged discrimination.  See <u>Mazzeo</u>, 746 F.3d at 1268 (explaining that, for ADA discrimination claims, a plaintiff must show that she had a disability "<u>at the time of the adverse employment action</u>." (emphasis added)); <u>Chevron Phillips Chem.</u>, 570 F.3d at 618 ("In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action."); <u>Cash</u>, 231 F.3d at 1306 n.5 (providing that a later manifesting impairment was irrelevant to an ADA claim because courts evaluate an employee's disability as manifested at the time of the discriminatory employment action).

It follows that "impairment" in the "regarded as" statutory prong, § 12102(1)(C), has the same meaning as "impairment" in the actual disability prong, § 12102(1)(A).  See <u>Ratzlaf v. United States</u>, 510 U.S. 135, 143, 114 S. Ct. 655-660 (1994) ("A term appearing in several places in a statutory text is generally

read the same way each time it appears."); Sullivan v. Stroop, 496 U.S. 478, 484, 110 S. Ct. 2499, 2504 (1990) (reciting the well-established proposition that "identical words used in different parts of the same act are intended to have the same meaning" (internal quotation marks omitted)).  This is especially true here where § 12102(1)(C) refers to "such an impairment," which necessarily refers back to § 12102(1)(A).  42 U.S.C. § 12102(1)(A), (C) (emphasis added).  In "regarded as" cases, a plaintiff must show that the employer knew that the employee had an actual impairment or perceived the employee to have such an impairment at the time of the adverse employment action.  42 U.S.C. § 12102(3)(A).  Further, the impairment must not be "transitory and minor."  Id. § 12102(3)(B).

Second and similarly, when § 12102(3)(A) is read most naturally, an individual meets the requirement of being regarded as disabled only if she was subject to termination "because of an actual or perceived physical or mental impairment."  See 42 U.S.C. § 12102(3)(A).  An employer does not fire or otherwise discriminate against an employee "because of" a perceived physical impairment unless the employer actually perceives that the employee has the impairment.  Section 12102(3)(A) does not, by its terms, extend to an employer's belief that an employee might contract or develop an impairment in the future.  See EEOC v. BNSF Ry. Co., 902 F.3d 916, 923 (9th Cir. 2018) (agreeing that, under § 12102(3)(A), for an employer to regard an individual as having a disability, the

14

employer "must have regarded him as having a <u>current</u> impairment"); <u>Adair v. City of Muskogee</u>, 823 F.3d 1297, 1306 (10th Cir. 2016) (providing in a § 12102(3)(A) case, "for a plaintiff alleging disability discrimination to show that the employer regarded h[er] as having an impairment, the plaintiff must show that (1) [s]he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action."); <u>Morriss v. BNSF Ry. Co.</u>, 817 F.3d 1104, 1113 (8th Cir. 2016) (stating for a § 12102(3)(A) claim, "[t]he ADA does not prohibit discrimination based on a perception that a physical characteristic—as opposed to a physical impairment—may eventually lead to a physical impairment as defined under the Act.  Instead, the plain language of the ADA prohibits actions based on an existing impairment or the perception of an existing impairment.").

Third, we recognize that the ADA directs that "[t]he definition of disability . . .  shall be construed in favor of broad coverage of individuals." <u>See</u> <u>id.</u> § 12102(4)(A).  But that is only "to the maximum extent permitted by the terms of this chapter." <u>Id.</u>  Even construing the disability definition broadly in favor of coverage, we still conclude that the terms of the ADA protect anyone who experiences discrimination because of a current, past, or perceived disability—not a potential future disability.  <u>Id.</u> §§ 12102(1), 12102(3)(A).

15

Fourth, our conclusion is consistent with the EEOC's own interpretive guidance, which states that a predisposition to developing an illness or disease is not a physical impairment. See Harrison, 593 F.3d at 1214 ("[A]lthough administrative interpretations of an Act by its enforcing agency are not controlling, they do constitute a body of experience and informed judgment to which [we] . . . may properly resort for guidance." (internal quotation marks omitted)). In its regulations, the EEOC counsels that "[i]t is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments." 29 C.F.R. Pt. 1630, App. § 1630.2(h). Those regulations further state that "characteristic predisposition to illness or disease" does not constitute a physical impairment under the ADA. Id. If a predisposition to developing a disease in the future is not a physical impairment, by analogy, we do not see how Lowe's heightened risk of developing the disease Ebola in the future due to her visit to Ghana constitutes a physical impairment either. As a result, under the facts of this case, Massage Envy did not perceive Lowe as having a physical impairment within the meaning of the ADA when it terminated her employment.

The EEOC disagrees, urging instead that the ADA is broad enough to prohibit an employer from firing an employee because the employer perceives that the employee will imminently contract a disease in the near future. The EEOC

16

reaches this conclusion by focusing on the present tense of the verbs in the "regarded as" prong of the disability definition in § 12102(1)(C)—"being regarded as having such an impairment"—and the Dictionary Act, which instructs: "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words used in the present tense include the future as well as the present." 1 U.S.C. § 1. With the Dictionary Act in hand, the EEOC asserts that we should read the "regarded as" prong in § 12102(1)(C) to include "being regarded as will be having such an impairment." Despite the extraordinarily awkward prose that results, it is that interpretation, so says the EEOC, that catches the facts of this case.[4] We are not persuaded.

While it is true that the phrase "being regarded as having such an impairment" contains present tense verbs, the ADA's plain language and context indicates that the Dictionary Act does not apply here as the EEOC suggests. See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 199, 113 S. Ct. 716, 720 (1993) ("'Context' [in the Dictionary Act] means the text

---

[4]At oral argument, the EEOC also suggested that we should read the "regarded as" disabled prong as "being regarded as having an imminent impairment." Although that phrase reads better than the other alternative offered by the EEOC, the Dictionary Act does not authorize us to add the word "imminent" to a statute wherever we see fit. See Carr v. United States, 560 U.S. 438, 448, 130 S. Ct. 2229, 2236 (2010) (explaining that section 1 of the Dictionary Act "ascribes significance to verb tense" (emphasis added)); Catskill Dev., LLC v. Park Place Entm't Corp., 547 F.3d 115, 126 (2d Cir. 2008) (relying on the Dictionary Act to read the verb "is" as "will be" in a provision of the Indian Gaming Regulatory Act, 25 U.S.C. § 2703(4)).

of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts, and this is simply an instance of the word's ordinary meaning.").

As noted earlier, § 12102(3)(A) provides the express, specialized definition of "regarded as having such an impairment" for purposes of the ADA. To meet the requirements of "being regarded" as disabled under § 12102(3)(A), an individual must establish, in relevant part, that "she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). Notably, that statutory phrase in § 12102(3)(A) contains no present tense verb for the Dictionary Act to carry into the future. Rather, by its terms, for an employee to qualify as "being regarded as" disabled, the employer must have perceived the employee as having a current existing impairment at the time of the alleged discrimination.

We reject the EEOC's reading of § 12102(1)(C), as it ignores altogether the ADA's direction in § 12102(3)(A). See Corley v. United States, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566 (2009) (noting that it is "one of the most basic" canons of statutory interpretation that "a statute should be construed so that effect is given to all its provisions" (internal quotation marks and citations omitted)). "'It is the duty of the court to give effect, if possible, to every clause and word of a statute.'"

18

In re Failla, 838 F.3d 1170, 1175 (11th Cir. 2016) (quoting Inhabitants of Montclair Twp. v. Ramsdell, 107 U.S. 147, 152, 2 S. Ct. 391, 395 (1883)).

And to come full circle, in reading the ADA most naturally, we would expect "regarded as having such an impairment" in § 12102(1)(C)—the paragraph relied upon by the EEOC—to retain the same meaning as that phrase is explicitly given by its definition in § 12102(3)(A).  To be sure, "[i]n all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning."  Cochise Consultancy, Inc. v. United States ex rel. Hunt, 587 U.S. __, __, 139 S. Ct. 1507, 1512 (2019).  This is especially so because the two paragraphs cross-reference one another.  Compare 42 U.S.C. § 12102(1)(C) ("being regarded as having such an impairment (as described in paragraph (3) (emphasis added)), with id. § 12102(3)(A) ("For purposes of paragraph (1)(C): (A) An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes . . . ." (emphasis added)).

With these principles in mind, we conclude that the EEOC failed to state a "regarded as" disabled claim because it did not allege that Massage Envy perceived that Lowe had an existing impairment at the time it terminated her employment.  The district court did not err in dismissing the EEOC's "regarded as" claim.

## V.  ASSOCIATION DISCRIMINATION

Next, we turn to the EEOC's claim of association discrimination under the ADA.  See 42 U.S.C. § 12112(b)(4).  In this claim, the EEOC alleged that Massage Envy violated the ADA by firing Lowe based on "her association with people in Ghana whom Massage Envy believed to be disabled by Ebola."

Under § 12112(b)(4), the ADA defines "discriminate" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4).

This association discrimination provision "was intended to protect qualified individuals from adverse job actions based on 'unfounded stereotypes and assumptions' arising from the employees' relationships with particular disabled persons."  Oliveras–Sifre v. Puerto Rico Dep't of Health, 214 F.3d 23, 26 (1st Cir. 2000).  Indeed, the provision "was apparently inspired in part by testimony before House and Senate Subcommittees pertaining to a woman who was fired from her long-held job because her employer found out that the woman's son, who had become ill with AIDS, had moved into her house so she could care for him."  Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1082 (10th Cir. 1997).

To state a prima facie claim for association discrimination, the plaintiff must show: "(1) that she was subjected to an adverse employment action; (2) that she

20

was qualified for the job at that time; (3) that her employer knew at that time that she had a relative [or associate] with a disability; and (4) that the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative [or associate] was a determining factor in the employer's decision." Wascura v. City of S. Miami, 257 F.3d 1238, 1242 (11th Cir. 2001) (internal quotation marks and alteration omitted).  As to the third prong, while the nature of the relationship in question need not be familial, see 29 C.F.R. § 1630.8, a plaintiff must show an association or relationship with a specific disabled person or persons.  See 42 U.S.C. § 12112(b)(4).

Like the district court, we conclude that the EEOC failed to state an association discrimination claim under the ADA because it did not plausibly allege that Massage Envy knew that Lowe had an association with a specific disabled individual in Ghana when it terminated her employment.  As a matter of fact, the only specific person that Massage Envy knew that Lowe would associate with in Ghana was her sister.  But the EEOC never alleged that Lowe's sister had Ebola or that Massage Envy thought that her sister had Ebola.[5]

Instead, the EEOC contended, in essence, that Massage Envy believed Lowe might come into contact with certain unknown individuals while traveling in Ghana whom Massage Envy thought might have Ebola.  This is too attenuated to

---

[5]Lowe's intervenor complaint does not allege that either.

21

state an association discrimination claim under § 12112(b)(4) of the ADA, which requires both a known association and a known disability.  See 42 U.S.C. § 12112(b)(4) (prohibiting employment discrimination "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association" (emphasis added)).

Moreover, the EEOC failed to plausibly allege a sufficient association or relationship with said unknown individuals with Ebola in any event.  Lowe certainly was not traveling to Ghana to assist with the Ebola epidemic.  See, e.g., 29 C.F.R. Pt. 1630, App. § 1630.8 (suggesting that an employee doing volunteer work with people with AIDS might be the type of "association" contemplated by § 12112(b)(4) of the ADA).  And, of course, there was no Ebola outbreak in Ghana in the first place.  But even if some people in Ghana did have the disease, the EEOC has merely alleged that Lowe might come into contact with those individuals while traveling in the country.  That is too loose of an association for purposes of a claim under § 12112(b)(4).

In so concluding, we are persuaded by the Fourth Circuit's decision in Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205 (4th Cir. 2002).  In Freilich, the defendant hospital terminated the plaintiff physician.  Id. at 209.  In her complaint, the physician raised, inter alia, a claim for association discrimination under the ADA, alleging that she was discriminated against because

22

she refused to end her advocacy on behalf of her dialysis patients and was denied various privileges because of her "association with and her relationship to patients with disabilities." Id. at 216 (internal quotation marks omitted). The Fourth Circuit disagreed, concluding that the physician's complaint did not state an association discrimination claim because she alleged only "a loose association with disabled patients." Id. The Fourth Circuit reasoned that "such generalized references to association with disabled persons or to advocacy for a group of disabled persons are not sufficient to state a claim for association[] discrimination under the ADA." Id. As "[e]very hospital employee can allege at least a loose association with disabled patients," allowing the plaintiff physician "to proceed on such a basis would arm every hospital employee with a potential ADA complaint." Id. "A step of that magnitude is for Congress, not this court, to take." Id.

In this case, the EEOC has alleged an association even "looser" than the physician and patient relationship in Freilich. Here, the EEOC's entire claim is based on Massage Envy's concern that Lowe might come across some unknown person with Ebola while traveling in Ghana. But the EEOC has not cited to, nor are we aware of, a single case involving an association discrimination claim premised on an employer's belief about an employee's potential casual association with unknown disabled people.

23

At the end of the day, we need not, and do not, weigh in on whether it was unfair or misguided for Massage Envy to fire Lowe after she refused to cancel her trip to Ghana. As we have repeatedly and emphatically held, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason" contrary to federal law. Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1262 (11th Cir. 2001) (internal quotation marks omitted). Our sole concern is whether Massage Envy violated the ADA. On that score, the answer is no. The district court correctly dismissed this claim.

## VI.  UNLAWFUL INTERFERENCE

On appeal, the EEOC does not raise any arguments as to its claim that Massage Envy interfered with Lowe's exercise and enjoyment of her rights under the ADA. However, Lowe does, arguing that the district court wrongly concluded that it would be futile to allow the EEOC to amend its complaint to add this interference claim.[6] We disagree.

Under the Federal Rules of Civil Procedure, a district court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P.

---

[6]We review for abuse of discretion a district court's refusal to grant leave to file an amended complaint, although we review de novo the "legal conclusion of whether a particular amendment to the complaint would be futile." Harris v. Ivax Corp., 182 F.3d 799, 802 (11th Cir. 1999).

15(a)(2). But a district court may deny a motion for leave to amend as futile "when the complaint as amended would still be properly dismissed." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

The district court properly denied the EEOC's motion to file a second amended complaint because its interference claim would have been subject to dismissal as a matter of law for failure to state a claim.[7] Under the ADA's anti-interference provision, it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b). And the EEOC's interference claim tracked that language, alleging that, when owner Wuchko told Lowe that she would be fired if she did not cancel her Ghana trip, Massage Envy coerced, intimidated, and threatened Lowe and interfered with her exercise and enjoyment of rights under the ADA, in violation of 42 U.S.C. § 12203(b).

The problem with the EEOC's interference claim, however, is that, when Massage Envy fired Lowe, she had no existing rights under the ADA. Of course,

---

[7]The district court concluded, alternatively, that the interference claim was also due to be dismissed for failure to exhaust administrative remedies. On appeal, the EEOC submits that it is not required to exhaust administrative remedies before filing suit, citing EEOC v. Caterpillar, Inc., 409 F.3d 831 (7th Cir. 2005). Because we agree with the district court that the interference claim fails to state a claim upon which relief can be granted, we need not address the court's alternative basis for dismissing it based on failure to exhaust administrative remedies.

25

Lowe was not actually disabled by Ebola and thus had no right to a reasonable accommodation under the ADA. She had not associated with, or even planned to associate with, any known person disabled by Ebola either. Because Lowe had no rights under the ADA, Massage Envy could not and did not interfere with her exercise or enjoyment of those rights. Consequently, the EEOC could not have stated a plausible interference claim, and any amendment seeking to add such a claim to the complaint would have been futile.

## VII. LOWE'S INTERVENOR COMPLAINT

On appeal, Lowe also argues that the district court erred in not allowing her to intervene in this lawsuit.[8] Lowe contends that, although she timely moved to intervene, the district court did not rule on the merits of her motion. Rather, after determining that the EEOC's claims were due to be dismissed with prejudice, it directed the clerk to terminate all pending motions as moot and close the case. Lowe's motion to intervene was among those terminated motions. We agree with Lowe that the district court should have addressed the merits of her motion to intervene, rather than terminating it as moot.

Although district courts enjoy broad discretion in deciding how best to manage the cases before them, that discretion is not unfettered. Chudasama v.

---

[8]We review the denial of a motion to intervene as of right de novo. Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508, 1512 (11th Cir. 1996).

26

Mazda Motor Corp., 123 F.3d 1353, 1366–67 (11th Cir. 1997).  "When a litigant's rights are materially prejudiced by the district court's mismanagement of a case, we must redress the [error]."  Id. at 1367.  As we have explained, "[f]ailure to consider and rule on significant pretrial motions before issuing dispositive orders can be an abuse of discretion" or constitute legal error.  Id.

Federal Rule of Civil Procedure 24(a)(1) states that "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(a).  Under Title VII, 42 U.S.C. § 2000e-5(f), as the aggrieved employee, Lowe had a right to intervene in this action brought by the EEOC.  See 42 U.S.C. § 2000e-5(f)(1).  The language of § 2000e-5(f)(1) unambiguously gives employees an unconditional right to intervene in EEOC enforcement actions.  Id. ("The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . .").  In fact, once the EEOC files suit on its own, "the employee has no independent cause of action."  EEOC v. Waffle House, Inc., 534 U.S. 279, 291, 122 S. Ct. 754, 763 (2002).  The employee's only option is to intervene in the EEOC's suit.  Id.

Here, Lowe timely filed her motion to intervene and she had an unconditional statutory right to intervene in this lawsuit.  The district court thus had no discretion to deny her intervention under Rule 24(a).  By failing to consider

27

and rule on the merits of Lowe's motion before dismissing the EEOC's complaint, the district court effectively circumvented the mandates of both Rule 24(a) and § 2000e-5(f). That was error. The district court should have considered the merits of Lowe's motion to intervene.

Nevertheless, because we have affirmed the district court's dismissal of each of the EEOC's claims, any error by the district court in declining to rule on Lowe's motion to intervene was harmless. The standard for harmless error is whether the complaining party's substantial rights were infringed upon. United States v. Mar. Life Caribbean Ltd., 913 F.3d 1027, 1033 (11th Cir. 2019); Haney v. Mizell Mem'l Hosp., 744 F.2d 1467, 1475 (11th Cir. 1984). The error by the district court prejudiced Lowe only if there is a "reasonable likelihood that the outcome would have been different" if the district court had permitted Lowe to intervene in the lawsuit before proceeding to decide the merits of the EEOC's claims. See Mar. Life Caribbean Ltd., 913 F.3d at 1033 (internal quotation marks omitted).

Lowe was not prejudiced because there is no reasonable likelihood that the outcome of this proceeding would have been different had she intervened. In her intervenor complaint, Lowe advanced the exact same factual allegations, claims, and arguments that the EEOC had already made itself in the lawsuit. Just like the EEOC, Lowe claimed that Massage Envy perceived her as having a disability (Ebola) and fired her due to that perceived disability (Ebola), in violation of the

28

ADA.  Although Lowe brought that "regarded as" disabled claim under both the ADA and the FCRA, "disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims."  Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007).  Therefore, if the district court had allowed Lowe to intervene, the court would have ultimately dismissed Lowe's "regarded as" disabled claim for the same reasons that it dismissed the EEOC's "regarded as" disabled claim.  The outcome of the proceeding would not have differed.

In turn, we have affirmed on appeal the district court's dismissal of the EEOC's "regarded as" disabled claim, as well as its association discrimination and interference claims.  And in so ruling, we have considered every issue that Lowe raised in her briefing, including her vigorous arguments that the district court erred in dismissing all three of the EEOC's ADA claims.  For all of these reasons, Lowe suffered no prejudice by the district court not allowing her to intervene in this proceeding.  In light of these factual circumstances, we affirm the district court's dismissal of Lowe's motion to intervene because any error the court committed by failing to address the merits of her motion was harmless.

## VIII.  CONCLUSION

For the foregoing reasons, we must affirm the district court's final judgment in favor of Massage Envy.

**AFFIRMED.**

JORDAN, Circuit Judge, concurring.

If we assume the facts alleged in the complaint are true, Mr. Wuchko engaged in the sort of stereotyping that the ADA was meant to prevent when he fired Ms. Lowe because she refused to cancel her trip to Ghana to visit her sister. *See, e.g., Ross v. Campbell Soup Co.*, 237 F.3d 701, 707 (6th Cir. 2001) ("The ADA was enacted, in part, to eliminate the sort of stereotyping that allowed employers to see their employees primarily as their disabilities and not as persons differently abled from themselves."); Lex Larson, 9 Employment Discrimination §153.09[3] (2d ed. 2019) (explaining that the ADA, among other things, was meant to target "ignorance-based employment discrimination"). From a policy perspective, then, the position of the EEOC and Ms. Lowe on the "regarded as having" language in 42 U.S.C. §§ 12102(1)(C) & 12102(3)(A)—that the phrase encompasses a decision made by an employer based on its perception that an employee is going to suffer or experience a disability in the future—makes a lot of sense. A couple of district courts, in fact, have recently agreed with the reading of the statutory language advocated by the EEOC and Ms. Lowe. *See Shell v. Burlington N. Santa Fe Ry. Co.*, 2018 WL 1156249, *4–*5 (N.D. Ill. Mar. 5, 2018); *EEOC v. Amsted Rail Co., Inc.*, 280 F. Supp. 3d 1141, 1150–51 (S.D. Ill. 2017). *See also EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1018 (7th Cir. 2001) (Wood, J., dissenting) (dicta).

31

But in my view the court correctly concludes that the "regarding as having" language is best read to cover only an employer's perception that an employee has an existing (i.e., current) disability.  Under the circumstances, an appeal to one of the ADA's motivating purposes "fail[s] to overcome the clear statutory language." *Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018).  *See also Mertens v. Hewitt Assocs*, 508 U.S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration.") (emphasis deleted).  I therefore join Parts I–V of the court's opinion.

With respect to Part VI, which addresses the EEOC's motion for leave to amend to assert an unlawful interference claim, I agree with everything except footnote 7.  Unlike the court, I would decide the important question of whether the EEOC is required to exhaust administrative remedies (and satisfy all that the exhaustion doctrine entails) before filing suit.  And I would hold, like the Seventh Circuit, that when the EEOC is the plaintiff, it can assert any claims it believes are warranted, and the doctrine of exhaustion of administrative remedies does not apply:

> [E]xhaustion of administrative remedies is an issue when the suit is brought by a private party but not when the Commission is the plaintiff. Were the private party permitted to add claims that had not been presented in the administrative charge filed with the EEOC, the Commission's informal procedures for resolving discrimination charges . . . would be by-passed, in derogation of the statutory scheme.  That is not an issue

> when the EEOC itself is the plaintiff, which is why a suit by the EEOC is not confined 'to claims typified by those of the charging party[.]'

*EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 832–33 (7th Cir. 2005) (citations omitted) (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 331 (1980)).